ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI-DJ 2024-062C

| | | |
|---|---|---|
| **WILLIAM AGOSTO MANSO Y OTROS**<br><br>Apelante<br><br>v.<br><br>**LUMA ENERGY Y OTROS**<br><br>Apelado | TA2025AP00030 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **San Juan**<br><br>Civil Núm.: **SJ2024CV02978**<br><br>Sobre: Enriquecimiento injusto |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de octubre de 2025.

Comparece ante nos el señor William Agosto Manso, la señora Marylin Fernández Morales y la Sociedad Legal de Bienes Gananciales, compuesta por ambos, (en conjunto, el matrimonio Agosto Fernández o parte apelante) mediante una *Apelación* en la que nos solicitan que dejemos sin efecto una *Sentencia Parcial* emitida el 17 de enero de 2025 y una *Sentencia* emitida el 2 de abril de 2025 por el Tribunal de Primera Instancia, Sala Superior de San

Juan.[1] Por medio de dichos dictámenes, el foro primario declaró Ha Lugar ambas solicitudes de desestimación, presentadas por el Banco Popular de Puerto Rico (BPPR) y LUMA Energy (LUMA), respectivamente, y en su consecuencia, desestimó la demanda de epígrafe.

Por los fundamentos que expondremos a continuación, desestimamos el recurso con relación a la *Sentencia Parcial* y confirmamos la *Sentencia* apelada.

**I.**

El caso de marras tiene su génesis el 31 de marzo de 2024 cuando el matrimonio Agosto Fernández presentó una demanda de enriquecimiento injusto, sentencia declaratoria, interdicto permanente, y daños y perjuicios en contra de LUMA y BPPR.[2] El 28 de junio de 2024, mediante una demanda enmendada, dicho matrimonio solicitó convertir su demanda original a una de clase.[3] En ella, la parte apelante alegó que LUMA realizó débitos no autorizados de su cuenta de banco con BPPR. Sostuvo que en un mismo día LUMA retiró cuatro (4) pagos por la cantidad de $278.24 y otro por $230.00. Indicó, además, que se comunicó con LUMA, quien aceptó que los débitos efectuados fueron producto de un error

---

[1] Apéndice del recurso de *Apelación*, págs. 102-115. Notificada y archivada en autos el 21 de enero de 2025; *Íd.* págs. 151-160. Notificada y archivada en autos el 2 de abril de 2025.

[2] *Íd.*, págs. 1-18.

[3] *Íd.*, págs. 19-29.

sistemático. Por lo cual, propuso realizarle un crédito a la cuenta de servicio de la parte apelante, pero denegó la devolución líquida del dinero.

El 16 de septiembre de 2024, LUMA presentó una *Moción en Solicitud de Desestimación*.[4] Alegó que el foro primario carecía de jurisdicción sobre la materia en el caso de marras. Ello, al amparo de la "*Ley de Transformación y ALIVIO Energético*", Ley Núm. 57 del 27 de mayo de 2014(Ley Núm. 57-2014), 22 LPRA sec. 1051 *et seq.*, que le confirió expresamente al Negociado de Energía de Puerto Rico (NEPR) la jurisdicción primaria y exclusiva sobre controversias relacionadas a la facturación de compañías de energía.

Por su parte, el 23 de septiembre de 2024, BPPR presentó una *Moción de Desestimación de Reclamaciones en contra de la Parte Codemandada Banco Popular de Puerto Rico*.[5] Sostuvo que el caso de epígrafe no contenía causa de acción en su contra o alegaciones fácticas que ameritaran la concesión de un remedio, conforme a la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2. Además, argumentó que la controversia se tornó académica, puesto que el BPPR fijó un "*stop payment*" en torno a los débitos de LUMA.

En respuesta, el 11 de octubre de 2024, la parte apelante presentó una *Oposición a Moción de Desestimación de Banco Popular*

---

[4] *Íd.*, págs. 30-43.
[5] *Íd.*, págs. 44-57.

*de Puerto Rico.*[6] En síntesis, reiteró que LUMA realizó actos de enriquecimiento injusto y fraude, conducta que avaló BPPR. Adujo en su escrito que dicho consentimiento acarreaba pérdidas irreparables que ameritaban la concesión de un remedio y un interdicto permanente.

A su vez, el 11 de octubre de 2024, la parte apelante sometió una *Oposición a Moción de Desestimación de LUMA Energy.*[7] En lo pertinente, argumentó que el TPI no carecía de jurisdicción porque "LUMA es quien contabiliza el servicio de energía eléctrica que se brinda a la ciudadanía, es LUMA la que emite la facturas por dicho servicio y las alegaciones de la Demanda del caso de epígrafe ponen de manifiesto que LUMA tuvo un rol protagónico, directo del cual no puede desligarse".[8]

El 17 de enero de 2025, el TPI emitió una *Sentencia Parcial* en la que desestimó la reclamación en contra de BPPR por falta de alegaciones fácticas que justificaran la concesión de un remedio.[9] Dicho foro razonó que la parte apelante acumuló a BPPR como parte codemandada sin alegaciones de hechos suficientes o fundamentos legales que sostuvieran el deber o autoridad de BPPR para aprobar o prohibir los débitos realizados por LUMA. Además, determinó que

---

[6] *Íd.*, págs. 58-74.
[7] *Íd.*, págs. 75-89.
[8] *Íd.*, pág. 77.
[9] *Íd.*, págs. 102-115. Notificada y archivada en autos el 21 de enero de 2025.

al BPPR no tener injerencia sobre LUMA o sus acciones, resultó inmeritorio el interdicto en contra de BPPR. En su defecto, dispuso que la controversia se tornó académica ya que BPPR aprobó el "*stop payment*" solicitado por la parte apelante. Añadió que la demanda carecía de demandantes nominales, consumidores de LUMA y clientes de BPPR en la misma situación, para establecer una clase compuesta de personas igualmente situadas.

El 30 de enero de 2025, el matrimonio Agosto Fernández presentó una *Moción de Reconsideración (Entrada Número 55¹).*[10] Allí reafirmó que las alegaciones presentadas en la demanda validaban todas las reclamaciones contra BPPR. Por su parte, el BPPR se opuso el 19 de febrero de 2025.[11]

Así las cosas, el 7 de marzo de 2025, el TPI emitió una *Resolución Interlocutoria,* notificada y archivada en autos el 10 de marzo de 2025, en la que declaró No Ha Lugar la *Moción de Reconsideración (Entrada Número 55¹).*[12]

El 9 de marzo de 2025, la parte apelante presentó una *Moción sobre Intención de Replicar a Oposición de Reconsideración (Entrada Número 58 ¹).*[13]

---

[10] *Íd.,* págs. 116-132.
[11] *Íd.,* págs. 133-142.
[12] *Íd.,* págs. 146-148.
[13] *Íd.,* págs. 143-145.

Ante ello, el 2 de abril de 2025, el TPI emitió una *Orden*, con relación a dicha petición, en la que expuso "Véase Resolución".[14]

A su vez, ese mismo día, el foro primario emitió y notificó una *Sentencia* en la que declaró Ha Lugar la *Moción en Solicitud de Desestimación* presentada por LUMA.[15] Concluyó que no tenía jurisdicción sobre la materia en el caso de epígrafe al amparo de la Ley 57- 2014, *supra.*

En cambio, el 17 de abril de 2025, el matrimonio Agosto Fernández sometió una *Moción de Reconsideración de Sentencia (Entrada Número 67 ¹) Nulidad de Sentencia (Entrada Número 55).*[16] Suplicó del foro sentenciador dejar sin efecto la *Sentencia* emitida el 2 de abril de 2025. Igualmente, solicitó el relevo de la *Sentencia Parcial* emitida el 17 de enero de 2025. Fundamentó la necesidad de "relevar a la parte [apelante] de los efectos de la Sentencia que dictó este Honorable Tribunal en el caso de epígrafe por ser nula al no haberse satisfecho la evaluación del fraude perpetuado por la parte [recurrida] BPPR y al esta no haber ofrecido a la parte [apelante] todas las alternativas de mitigación de pérdidas para evitar que LUMA se apropiara fraudulenta e ilegalmente del dinero depositado en su cuenta".[17]

---

[14] *Íd.,* pág. 150. Notificada y archivada en autos el 2 de abril de 2025.
[15] *Íd.,* págs. 151-160. Notificada y archivada en autos el 2 de abril de 2025.
[16] *Íd.,* págs. 161-183.
[17] *Íd.,* pág. 182.

Finalmente, el 19 de mayo de 2025, el TPI emitió una *Resolución Interlocutoria* en la que declaró No Ha Lugar la *Moción de Reconsideración de Sentencia (Entrada Número 67 [1]) Nulidad de Sentencia (Entrada Número 55).*[18]

Inconforme, el 20 de junio de 2025, el matrimonio Agosto Fernández acudió ante nos mediante el presente recurso de *Apelación* y nos planteó los siguientes señalamientos de error:

> **ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA AL DESESTIMAR LA DEMANDA ENMENDADA DE ESTE CASO CONTRA LUMA ENERGY ADUCIENDO FALTA DE JURISDICCIÓN SOBRE LA MATERIA, CUANDO LAS ALEGACIONES EN DICHA DEMANDA SON SUFICIENTES EN DERECHO PARA SUSTENTAR LA DISCUSIÓN EN DERECHO.**

> **ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA AL DESESTIMAR LA DEMANDA ENMENDADA DE ESTE CASO EN SU TOTALIDAD CONTRA BPPR, CUANDO DICHA DEMANDA RECOGE HECHOS SUFICIENTES EN DERECHO QUE VALIDAN LA DISCUSIÓN EN DERECHO Y TODOS LOS RECLAMOS QUE FORMAN PARTE DE DICHA DEMANDA ENMENDADA.**

> **ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA AL NO DECLARAR NULA LA SENTENCIA PARCIAL DESESTIMANDO LA DEMANDA DE ESTE CASO CONTRA BPPR Y AL NO RELEVAR A LA PARTE APELANTE DE DICHA SENTENCIA DE CONFORMIDAD CON LA REGLA 49.2 DE LAS DE PROCEDIMIENTO CIVIL, *SUPRA*, CUANDO LA PARTE APELANTE EXPUSO LAS RAZONES EN DERECHO ATADAS AL FRAUDE QUE PERMITEN DICHO RELEVO.**

---

[18] *Íd.*, págs. 194-195. Notificada y archivada en autos el 20 de mayo de 2025.

**ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA AL DICTAR SENTENCIA SIN PERMITIR A LA PARTE APELANTE REPLICAR A LA OPOSICIÓN A MOCIÓN DE RECONSIDERACIÓN DE BPPR EN LA QUE EXPRESÓ FALSAMENTE QUE LA PARTE APELANTE DISTORSIONÓ DATOS E INCLUYÓ DATOS NUEVOS PARA FAVORECER SU POSICIÓN.**

Por su parte, el 7 de agosto de 2025, BPPR presentó un *Alegato en Oposición a la "Apelación"*. En lo pertinente, expuso que la presentación inoportuna del recurso de epígrafe impedía la revisión de la *Sentencia Parcial* por falta de jurisdicción.

Así mismo, el 7 de agosto de 2025, LUMA presentó un *Alegato en Oposición*. En síntesis, alegó que el foro primario correctamente desestimó la demanda por falta de jurisdicción al amparo de la Ley Núm. 57-2014, *supra*. Del mismo modo, adujo que no procedía la sentencia declaratoria toda vez que el asunto se tornó académico al LUMA acreditar el dinero debitado.

Con la comparecencia de ambas partes, procedemos a resolver.

## II.

### A.

En nuestro sistema jurídico, la jurisdicción se ha definido como el poder o la autoridad que tienen los tribunales para considerar y resolver casos o controversias. *MCS Advantage, Inc. v. Fossas Blanco*, 211 DPR 135, 144 (2023); *Administración de Terrenos de Puerto Rico v. Ponce Bayland Enterprises, Inc.*, 207 DPR 586, 600 (2021). La falta de

jurisdicción transgrede directamente sobre el poder que posee para adjudicar una controversia. *Allied Management Group, Inc. v. Oriental Bank*, 204 DPR 374, 385-386 (2020). Por lo tanto, los tribunales deben ser celosos guardianes de su jurisdicción y, por ende, deben atender con preferencia los asuntos concernientes a la jurisdicción. *R & B Power, Inc. v. Junta de Subastas de la Administración de Servicios Generales*, 213 DPR 685, 698 (2024); *Torres Alvarado v. Madera Atiles*, 202 DPR 495, 500 (2019). Es decir, los tribunales tienen la responsabilidad indelegable de examinar primeramente su propia jurisdicción, así como la del foro de donde procede el recurso ante su consideración. *Torres Alvarado v. Madera Atiles, supra*, pág. 500.

En lo pertinente, la Regla 52.2(a) de Procedimiento Civil, *supra*, dispone que el recurso de apelación para revisar sentencias ante el Tribunal de Apelaciones deberá ser presentado dentro del término jurisdiccional de treinta días (30), contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado. Similarmente, la Regla 13(A) del Reglamento del Tribunal de Apelaciones, *supra*, dicta que las apelaciones contra las sentencias dictadas en casos civiles por el Tribunal de Primera Instancia se presentarán dentro del término jurisdiccional de treinta (30) días contados desde el archivo en autos de una copia de la notificación de la sentencia, equivalente al envío de la notificación en la plataforma de SUMAC. Por tratarse de un

término de naturaleza jurisdiccional, es de carácter fatal y su incumplimiento priva al foro apelativo de jurisdicción para atender el recurso instado. *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000).

A pesar de lo anterior, la moción de reconsideración puede tener un efecto en la jurisdicción de un tribunal apelativo para revisar las actuaciones de un foro inferior. *In re Laboy*, 209 DPR 288, 301 (2022). Por medio de la Regla 47 de Procedimiento Civil, *supra*, la parte adversamente afectada por una resolución u orden emitida por el foro primario tiene un término de cumplimiento estricto de quince (15) días, contados a partir de la fecha de notificación de la orden o resolución, para radicar la solicitud de reconsideración ante el TPI. *Marrero Rodríguez v. Colón Burgos*, 201 DPR 330, 337 (2018). En esa moción se deberán exponer con suficiente particularidad y especificidad los hechos y el derecho, y "fundarse en cuestiones sustanciales relacionadas con las determinaciones de hechos pertinentes o conclusiones de derecho materiales". Regla 47 de Procedimiento Civil, *supra*; *Marrero Rodríguez v. Colón Burgos*, *supra*, págs. 337-338. Una vez presentada la moción de reconsideración con las especificidades de dicha regla, quedarán interrumpidos los términos para recurrir en alzada para todas las partes. Estos términos comenzarán a correr nuevamente desde la

fecha del archivo en autos de la copia de la notificación resolviendo la petición de reconsideración.

**B.**

Ahora bien, la doctrina de la jurisdicción primaria dispone cuál foro atendería el caso en controversia en primera instancia. *Cont.Tit. 76 Kings Court v MAPFRE,* 208 DPR 118, 1026 (2022). Esta jurisdicción primaria consiste en dos vertientes: la primaria concurrente y la primaria exclusiva. *Beltrán Cintrón et al. V. ELA et al.,* 204 DPR 89, 101 (2020). La jurisdicción primaria concurrente aplica cuando la propia ley determina que la reclamación se inicie en la agencia o en el tribunal. *Íd.* Por otro lado, la jurisdicción primaria exclusiva aparece cuando la propia ley establece que el foro administrativo tendrá jurisdicción inicial exclusiva para entender en la reclamación. *Íd.* (*citando a Rodríguez Rivera v. De León*, 191 DPR 700 (2014)); *Báez Rodríguez v. ELA*, 179 DPR 231 (2010); *SLG Semidey Vázquez v. ASIFAL*, 177 DPR 657 (2009). Asimismo, la jurisdicción primaria exclusiva meramente pospone la revisión judicial, hasta tanto el organismo administrativo emita su determinación final. *Beltrán Cintrón et al. V. ELA et al., supra*, pág. 104 (*citando a SLG Semidey Vázquez v. ASIFAL, supra*).

**C.**

La Ley Núm. 57-2014, creó el NEPR como un ente independiente especializado, encargado de reglamentar, supervisar

y hacer cumplir la política pública energética del Gobierno de Puerto Rico. Art. 1.3 de la Ley Núm. 57-2014, *supra*, sec. 1051a (j).

Por su parte, el Artículo 6.4 de la Ley Núm. 57-2014, *supra*, sec. 1054c, dispone que el NEPR tendrá jurisdicción primaria exclusiva sobre, en lo pertinente, los casos y controversias relacionadas con la revisión de facturación de las compañías de energía a sus clientes por los servicios de energía eléctrica. A esos efectos, todo cliente podrá objetar o impugnar cualquier ajuste de la factura de servicio eléctrico y solicitar una investigación por parte de la compañía de servicio eléctrico dentro de un término de treinta (30) días, contados a partir del envío de dicha factura a través de correo electrónico o, de enviarse mediante correo regular, a partir de los treinta y tres (33) días siguientes a la fecha de la expedición de la factura. Sec. 4.01 del Reglamento sobre el Procedimiento para la Revisión de Facturas y Suspensión del Servicio Eléctrico por Falta de Pago, Reglamento Núm. 8863 del 1 de diciembre de 2016, pág. 13.

Además, los clientes deberán agotar los remedios de objeciones de facturas ante la compañía de servicio eléctrico antes de solicitar una revisión ante el NEPR. *Íd.*, pág. 9. Todo cliente, de estar insatisfecho con la decisión final de la compañía de servicio eléctrico, tendrá treinta (30) días, contados a partir de la fecha de notificación de la decisión final, para solicitar revisión ante el NEPR.

*Íd.*, pág. 19. De estar inconforme con la resolución final del NEPR, el cliente podrá acudir al Tribunal de Apelaciones mediante un recurso de revisión judicial. *Íd.*, pág. 21.

**D.**

A tenor con la Regla 10 de Procedimiento Civil, *supra*, R. 10, la parte demandada puede presentar tres (3) tipos de mociones previo a contestar la demanda presentada en su contra: (1) solicitud de desestimación; (2) solicitud para solicitar una exposición más definida; (3) y moción eliminatoria. *Costas Elena v. Magic Sport Culinary, Corp.*, 213 DPR 523, 533 (2024). Asimismo, una persona contra quien se presentó una reclamación judicial puede solicitar la desestimación del pleito si es evidente que de las alegaciones incluidas en la demanda prosperará alguna de las defensas afirmativas de la Regla 10.2 de Procedimiento Civil, *supra*, R. 10.2, Véase, *Comisión v. González Freyre et al.*, 211 DPR 579, 614 (2023); *Eagle Security Police, Inc. v. Dorado*, 211 DPR 70, 83 (2023); *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 701 (2012). A tenor con ello, la parte demandada puede presentar una solicitud de desestimación invocando que la demanda "falta de jurisdicción sobre la materia o la persona". *Colón Rivera, et al., v. ELA*, 189 DPR 1033, 1049 (2013); *González v. Mayagüez Resort & Casino*, 176 DPR 848, 855 (2009).

Siendo así, "siempre que surja, por indicación de las partes o de algún otro modo, que el tribunal carece de jurisdicción sobre la materia, éste desestimará el pleito". Regla 10.8 (c) de Procedimiento Civil, *supra*, R. 10.8 (c); *González v. Mayagüez Resort & Casino*, *supra*, pág. 855. Según lo anterior, se puede desestimar una reclamación por tratarse de la jurisdicción de una agencia administrativa o de la esfera federal, y, por lo tanto, bajo la Regla 10.8 (c) de Procedimiento Civil, *supra*, se les ordena a los tribunales estatales a desestimar la reclamación cuando surge ausencia de jurisdicción sobre la materia ante el foro aludido. *González v. Mayagüez Resort & Casino, supra*, pág. 855.

**E.**

Toda sentencia dictada por un tribunal tiene a su favor una presunción de validez y corrección. *López García v. López García*, 200 DPR 50, 59 (2018). No obstante, la Regla 49.2 de Procedimiento Civil, *supra*, R. 49.2, define las razones por las que los tribunales pueden relevar a una parte de los efectos de una sentencia, orden o procedimiento. Solamente "en ciertos escenarios muy particulares nuestro ordenamiento procesal civil permite a una parte solicitar el relevo de los efectos de una sentencia previamente dictada en su contra". *López García v. López García, supra*. Las razones que provee la referida regla son las siguientes: (1) error, inadvertencia, sorpresa o negligencia excusable; (2) descubrimiento

de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio; (3) la existencia de fraude extrínseco o intrínseco, falsa representación u otra conducta impropia de la parte adversa; (4) **nulidad de sentencia**; (5) la sentencia fue satisfecha o renunciada; (6) la sentencia anterior en la cual se fundaba fue revocada; (7) no sería equitativo que la sentencia continúe en vigor; o (8) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia. (Énfasis nuestro) *Íd.,* pág. 60.

La persona que se ampara en la Regla 49.2 de Procedimiento Civil, *supra,* debe aducir al menos una de las razones antes enumeradas. *García Colón et al. v. Sucn. González,* 178 DPR 527, 540 (2010). El precepto debe interpretarse liberalmente y cualquier duda debe resolverse a favor de la persona que solicita que se deje sin efecto una sentencia o anotación de rebeldía, a fin de que el proceso continúe y el caso pueda resolverse en sus méritos. *García Colón et al. v. Sucn. González, supra*, pág. 541. No obstante, nuestro Tribunal Supremo ha señalado que, como regla general, la determinación de relevar a una parte de los efectos de una sentencia está supeditada a la discreción del foro sentenciador. *López García v. López García, supra*, pág. 61. Ello encuentra su excepción en los casos de nulidad o cuando la sentencia ha sido satisfecha. *López García v. López García, supra,* pág. 61; *García Colón et al. v. Sucn.*

*González, supra*; *Rivera v. Algarín*, 159 DPR 482, 490 (2003); *Garriga Gordils v. Maldonado Colón*, 109 DPR 817, 823-824 (1980). Es decir, resulta mandatorio decretar nula la sentencia y declarar su inexistencia jurídica. *García Colón et al. v. Sucn. González, supra.*

Es harto conocido que, "una moción de relevo de sentencia no puede ser sustitutiva de los recursos de revisión o reconsideración". *Piazza v. Isla del Río, Inc.,* 158 DPR 440, 449 (2003). Sin embargo, se puede considerar posterior a que dicha sentencia advenga final y firme. *García Colón et al. v. Sucn. González, supra*, pág. 541; *Piazza v. Isla del Río, Inc., supra*, pág. 449; *Pagán v. Alcalde Mun. de Cataño*, 143 DPR 314, 328 (1997); *Olmedo Nazario v. Sueiro Jiménez*, 123 DPR 294, 299 (1989). Además, "[l]as determinaciones judiciales que son finales y firmes no pueden estar sujetas a ser alteradas por tiempo indefinido". *Piazza v. Isla del Río, Inc., supra*, pág. 449. Por lo tanto, la Regla 49.2 de Procedimiento Civil, *supra*, "es categórica en cuanto a que la moción de relevo debe presentarse dentro de un término razonable, *'pero en ningún caso después de transcurridos seis (6) meses ...'* ". *Piazza v. Isla del Río, Inc., supra*, pág. 449 (*citando a Sánchez Ramos v. Troche Toro*, 111 DPR 155, 157-158 (1981)).

### III.

En el caso ante nuestra consideración, nos toca determinar si el foro primario ostenta la jurisdicción sobre la materia del caso de

epígrafe al amparo de la Regla 10.2(1) de Procedimiento Civil, *supra*, R. 10.2(1), y la Ley Núm. 57-2014, *supra*. Además, debemos dirimir si el TPI se excedió en su discreción al no permitirle al matrimonio Agosto Fernández replicar la oposición a la solicitud de reconsideración presentada por el BPPR y al denegarle a dicho matrimonio el relevo de la sentencia, conforme a la Regla 49.2 de Procedimiento Civil, *supra*. De igual modo, debemos resolver si incidió el foro primario al desestimar la demanda en contra de LUMA.

Como asunto de umbral, debemos auscultar nuestra jurisdicción con relación a la *Sentencia Parcial* del 17 de enero de 2025.

Según señalamos anteriormente, la Regla 52.2 de Procedimiento Civil, *supra*, establece el término que tiene una parte para comparecer ante este foro apelativo. Específicamente, impone un término jurisdiccional de treinta (30) días para la presentación de los recursos de apelación contados a partir del archivo en autos de la copia de la notificación de la sentencia. Dicha sentencia debe ser final conforme a la controversia que se pretende apelar.

En el caso de autos, el TPI emitió una *Sentencia Parcial* el 17 de enero de 2025, notificada el 21 de enero de 2025, donde desestimó la causa de acción contra BPPR. El 30 de enero de 2025, la parte apelante presentó una solicitud de reconsideración

interrumpiendo el término para acudir en revisión. Así las cosas, el foro primario declaró No Ha Lugar la petición de reconsideración por medio de la *Resolución Interlocutoria* emitida el 7 de marzo de 2025, y notificada el 10 de marzo de 2025.

Aunque, la parte apelante presentó una *Moción sobre Intención de Replicar a Oposición de Reconsideración (Entrada Número 58 [1])* el 9 de marzo de 2025, esta no interrumpió el término para apelar. Tal como pormenorizamos anteriormente, una vez presentada la moción de reconsideración con las especificidades de la Regla 47 de Procedimiento Civil, *supra*, quedarán interrumpidos los términos para recurrir en alzada para todas las partes. Estos términos comenzarán a correr nuevamente desde la fecha del archivo en autos de la copia de la notificación resolviendo la petición de reconsideración. Por lo tanto, el término jurisdiccional de treinta (30) días para las partes acudir ante este Tribunal comenzó a cursar desde el 10 de marzo de 2025 y venció el 9 de abril de 2025.

Habiéndose cumplido dicho término de fatal cumplimiento el 9 de abril de 2025, y ante la presentación del recurso de apelación el 20 de junio de 2025; es decir, en exceso de los treinta (30) días para recurrir a esta Curia, estamos impedidos de resolver en los méritos cualquier controversia adjudicada en la *Sentencia Parcial* apelada incluyendo la moción interlocutoria en solicitud de réplica a la oposición. Por tal razón, desestimamos el recurso en virtud de

la *Sentencia Parcial* aludida en los errores <u>dos y cuatro</u>, de conformidad con la Regla 52.2(a) de Procedimiento Civil, *supra* y la Regla 13 del Reglamento del Tribunal de Apelaciones, *supra*.

Finalizado el análisis jurisdiccional de este Tribunal, pasamos a resolver el resto de los señalamientos de error expuestos por la parte apelante.

Según pormenorizado anteriormente, la jurisdicción primaria exclusiva aparece cuando la propia ley establece que el foro administrativo tendrá jurisdicción <u>inicial</u> exclusiva para entender en la reclamación. *Beltrán Cintrón et al. V. ELA et al.*, *supra*, pág. 102. En otras palabras, la jurisdicción primaria exclusiva meramente <u>pospone la revisión</u> judicial, hasta tanto el organismo administrativo emita su determinación final. *Beltrán Cintrón et al. V. ELA et al.*, *supra*, pág. 104.

En lo pertinente, la factura eléctrica es aquel "documento que se envía mensualmente a los clientes o consumidores detallando todos los componentes, <u>cargos</u> o tarifas que forman parte del costo final por uso de electricidad que deberá pagar cada cliente o consumidor. La factura puede ser enviada por correo postal, correo electrónico, o <u>accedida por el cliente a través de la Internet</u>". Artículo 1.3(w) de la Ley Núm. 57-2014, *supra*, sec. 1054a. (Énfasis suplido).

A tenor con el Artículo 6.4 de la Ley Núm. 57-2014, *supra*, sec. 1054c:

(a) El Negociado de Energía tendrá jurisdicción primaria exclusiva sobre los siguientes asuntos:

. . . .

(2) Los casos y controversias relacionadas con la revisión de <u>facturación</u> de las compañías de energía a sus clientes por los servicios de energía eléctrica.

. . . .

(Énfasis suplido).

Además, el Artículo 6.27(a)(1) de la Ley Núm. 57-2014, *supra,*

sec. 1054z, expone que:

(a) <u>Antes de acudir al Negociado de Energía</u> para solicitar una revisión de factura de servicio eléctrico, <u>toda persona deberá agotar, ante la compañía de energía certificada que le cobró dicha factura,</u> el procedimiento administrativo informal que se establece en este Artículo y en los reglamentos que adopte el Negociado de Energía. En este proceso administrativo informal no aplicarán las disposiciones del Capítulo III de la Ley 38-2017, según enmendada, conocida como la "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico".

**(1)** Todo cliente podrá objetar o impugnar cualquier cargo, clasificación errónea de tipo de tarifa, cálculo matemático o ajuste de la factura de servicio eléctrico y solicitar una investigación por parte de la compañía de energía certificada dentro de un término de treinta (30) días a partir de la fecha en que dicha factura sea depositada en el correo postal o sea enviada al cliente vía correo electrónico. No obstante lo anterior, ningún cliente podrá utilizar este procedimiento para objetar o impugnar la tarifa vigente o el Cargo de Transición por la estructura de titulización (securitization) facturado por la Autoridad. Para poder objetar la factura y solicitar la correspondiente investigación, la persona deberá pagar la cantidad correspondiente al promedio de las facturas no disputadas durante los últimos seis (6) meses. La compañía de energía certificada no venderá

obligada a iniciar la investigación hasta que la cantidad indicada haya sido pagada. Las entidades o instrumentalidades públicas, incluyendo los municipios, que deseen objetar su factura tendrán un término de cuarenta y cinco (45) días para plantear la objeción y solicitar la investigación de la compañía de servicio eléctrico.

. . . .

(Énfasis suplido); Véase además, Sec. 4.01 del Reglamento 8863, *supra*, pág. 13.

De igual modo, el Reglamento 8863, *supra*, pág. 9, dispone

que:

Todo Cliente deberá agotar, ante la Compañía de Servicio Eléctrico, el Procedimiento Administrativo Informal de Objeción de Facturas establecido en este Reglamento previo a solicitar una revisión formal de cualquier objeción por parte de la Comisión de Energía. Mediante este Procedimiento Administrativo Informal, el Cliente explicará los fundamentos de su objeción a la Compañía de Servicio Eléctrico e intentará alcanzar una solución al asunto directamente con la Compañía.

(Énfasis suplido).

"Todo Cliente que no esté conforme con la decisión final de la Compañía de Servicio Eléctrico referente a una querella o una objeción de Factura podrá iniciar un procedimiento formal de revisión ante la Comisión de Energía dentro del término de treinta (30) días, contados a partir de la fecha de notificación de la decisión final". Reglamento 8863, *supra*, pág. 19. Posteriormente, de estar inconforme con la **resolución final de la comisión**, el cliente podrá acudir al Tribunal de Apelaciones mediante un recurso de revisión judicial. Reglamento 8863, *supra*, pág. 21.

A juicio del foro primario, procedía desestimar la demanda en contra de LUMA por falta de jurisdicción sobre la materia. Razonó que la asamblea legislativa le otorgó jurisdicción primaria exclusiva al NEPR para evaluar asuntos relacionados a cuestiones de facturación de compañías de energía, según dispone la Ley Núm. 57-2014, *supra*. Concluyó que, al tratarse de un caso relacionado a facturación, el proceso adjudicativo debía realizarse primariamente ante el NEPR, luego de realizar el proceso informal, según dispone el Reglamento 8863, *supra*.

Inconforme, el matrimonio Agosto Fernández sostuvo que, el caso de marras no estaba relacionado a asuntos de facturación, sino a actos fraudulentos y de enriquecimiento injusto por parte de LUMA con la anuencia de BPPR. Asimismo, solicitó que se dejara sin efecto la *Sentencia Parcial* del 2 de abril de 2025 por no poseer jurisdicción sobre la materia.

Por su parte, LUMA reiteró que el NEPR es quien tenía jurisdicción primaria y exclusiva del caso de epígrafe. Además, alegó que era improcedente el remedio interdictal y la sentencia declaratoria solicitados toda vez que se tornó académica la controversia. Ello, al exponer que las alegadas actuaciones no habían vuelto a ocurrir y que la parte apelante recibió un crédito por la cantidad cobrada en exceso. Le asiste razón.

Del expediente ante esta Curia, se desprende que LUMA debitó de la cuenta de banco del matrimonio Agosto Fernández múltiples pagos durante un mismo periodo, dado a una alegada falla en el sistema. Ello se desprende del *Historial de Pagos* de la página de internet de LUMA que anejó el matrimonio Agosto Fernández a su demanda demostrando los **cargos** realizados por error por parte de esta compañía.[19] Según el Artículo 1.3(w) de la Ley Núm. 57-2014, *supra*, sec. 1054a, la factura eléctrica, detalla "todos los componentes, **cargos** o tarifas que forman parte del costo final por uso de electricidad que deberá pagar cada cliente o consumidor. La **factura puede ser** enviada por correo postal, correo electrónico, o **accedida por el cliente a través de la Internet**". En otras palabras, si bien LUMA acreditó el dinero a la cuenta del matrimonio Agosto Fernández, la controversia que originó el pleito ante nos fue un error de facturación. Al tratarse de una controversia de facturación de LUMA, el NEPR posee jurisdicción primaria exclusiva para atenderla; y el foro primario, al igual que este foro, carecía de jurisdicción para atender este asunto. En otras palabras, el matrimonio Agosto Fernández tenía que agotar los remedios ante LUMA y el NEPR, y posterior a una determinación final del NEPR, podía acudir ante este foro mediante una revisión judicial. Ley Núm. 57-2014, *supra*, y el Reglamento 8863, *supra*.

---

[19] *Íd*, págs. 17-18.

Ante tales circunstancias, resolvemos que el foro primario no incidió en el <u>primer</u> señalamiento de error planteado por el matrimonio Agosto Fernández.

Finalmente, el foro primario tampoco cometió el <u>tercer</u> error; es decir, no abusó de su discreción al no relevar a la parte apelante de la *Sentencia Parcial* en conformidad con la Regla 49.2 de Procedimiento Civil, *supra*. Según el derecho antes reseñado, una moción de relevo al amparo de la Regla 49.2 no sustituye una moción de reconsideración o un recurso de revisión. Tampoco puede usarse con el fin de impugnar algún asunto que debió levantarse en un recurso de revisión. A esos efectos, el Tribunal Supremo de Puerto Rico ha enfatizado que esta moción "no está disponible para corregir errores de derecho ni errores de apreciación o valoración de la prueba". *García Colón et al. v. Sucn. González, supra,* pág. 540. Estos son fundamentos para ser atendidos mediante una reconsideración o apelación, pero no para relevar la sentencia correctamente dictada. *Íd.*, pág. 543.

En el caso de epígrafe, el matrimonio Agosto Fernández no cumplió con los requisitos de la Regla 49.2, *supra*, al omitir hechos específicos dirigidos a establecer el fraude que reclamó para decretar la nulidad de sentencia. De los hechos y la prueba presentada, el foro primario concluyó que BPPR no estaba vinculado a la controversia, por lo que no procedían las alegaciones de fraude.

Asimismo, BPPR negó dichas implicaciones. La mera alegación de fraude no constituye ni obliga al tribunal a decretar la nulidad de su dictamen. Adviértase que la solicitud de nulidad de sentencia no puede ser utilizada como estrategia para subsanar la falta de diligencia ni "para corregir errores de derecho ni errores de apreciación o valoración de la prueba". *García Colón et al. v. Sucn. González, supra,* pág. 540. Por lo tanto, no procedía declarar la nulidad de la sentencia.

Consecuentemente, resolvemos que el TPI no incidió en los errores señalados.

**IV.**

Por los fundamentos antes expuestos, desestimamos el recurso con relación a la *Sentencia Parcial* y confirmamos la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones